**IN THE COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | | |
|---|---|---|
| **REILLY'S WHOLESALE PRODUCE, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-668** |
| | ) | **(Judge Allegra)** |
| **THE UNITED STATES** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

DECLARATION OF RICHARD FASO

1. My name is Richard Faso. I am over the age of 21 years and fully competent to make this affidavit. Unless otherwise stated, all statements made herein are based on my personal knowledge.

2. I am employed by the Defense Supply Center Philadelphia, ["DSCP"] which is a buying activity for Defense Logistics Agency, a sub-agency of the Department of Defense. My job title is Director, Customer Operations Directorate in the Subsistence Supply Chain. I have been in this position since November 2005, but served as Deputy Director, Customer Operations Directorate from October 2004 to November 2005. From 1997 to 2001, I was Chief of the Operations Branch for the Produce Division at DSCP, and my main responsibility was to ensure excellent Produce support to the DeCA commissaries worldwide.

3. As the Director, Customer Operations Directorate for the Subsistence Supply Chain, my major duties are overseeing all aspects of customer support worldwide. We support predominantly the Military Services but also support other Federal Agencies, to include the Defense Commissary Agency (DeCA) and the United States Department of Agriculture (USDA). We handle operational rations, general dining hall food products, soda, fresh bakery, fresh dairy, fresh fruits and vegetables, and food service and field feeding equipment. Our support to DeCA involves mainly fresh fruits and vegetables, but we also support other commissary items to DeCA stores in Europe and the Pacific. Our support to DeCA is very challenging as deliveries are made nearly every day and the commodity is so fragile that dissatisfaction can easily occur if proper care is not taken. We have been DeCA's main provider of fresh fruits and vegetables since DeCA's inception.

4. I am very familiar with the DeCA Commissary system as evidenced by my four years of working directly with DeCA on all of their Produce support. DeCA has high

expectations of their Produce provider and we committed to meeting very stringent expectations while providing their Produce support. The logistical challenges with a fragile, short shelf life commodity, such as fresh fruits and vegetables, are great and much care must be taken to ensure the best quality product is purchased and that the cold chain is maintained to ensure a satisfactory delivery is made. Since the fresh fruits and vegetables are for resale, the Produce must be able to sell itself with its appearance, and the freshness must be maintained for the consumer as most consumers will buy several days worth of Produce to keep in the home.

5. The buying process that we employ consists of field buyers that work throughout the United States, developing relationships with commercial farmers to get the freshest product available. In addition, we rely on commercial Produce providers who can better leverage their purchases by combining their commercial requirements with our Military, USDA, and DeCA requirements. We also use established terminal markets whereby buyers are on the market as early as 2:00 AM to get the best product at the best price. We also work with DeCA on merchandising activities, such as re-setting of their Produce Department to meet a seasonal theme, providing expert advice on the handling of Produce, or the arrangement of Produce demonstrations in the commissary on a scheduled basis. This is all in an effort to increase the sales of produce in the commissaries and meet the expectations that DeCA placed on us as their Produce provider of choice.

6. In September 2005, after running a test in the VA, NC, SC areas, DeCA decided to purchase their Produce on their own beginning in FY 07. We worked on a transition plan with DeCA beginning in November 2005. Our Produce acquisition and distribution network consisted of 18 different offices and over 120 personnel, so it was vital that we transition with DeCA throughout FY 06, so that we could release our personnel with the utmost respect to their livelihood and provide them ample notice to pursue other options, while still maintaining support to DeCA. All personnel were notified of the loss of DeCA business and the subsequent loss of jobs, save for approximately 23-27 positions that would remain to support other aspects of our Produce business for the Military and USDA, by the end of FY 06 or September 30, 2006. In addition, we had to coordinate the closing of the offices and the respective leases that were involved.

7. We committed to support DeCA through FY 06 or September 30, 2006, for their Produce needs. As the coordination effort ensued, we communicated with DeCA on their progress of awarding their own Produce contracts. On April 26, 2006, we sent a letter to DeCA asking them to confirm their progress on their contracts, before we made official Reduction in Force (RIF) notices to our personnel, in the event that DeCA would need support beyond what was agreed. On May 15, 2006, DeCA responded advising that they fully expect to make all CONUS awards prior to the end of FY 06. On June 19, 2006, we sent another letter to DeCA, asking one more time, prior to issuing RIF notices, whether they would need any of our Produce network to support their needs into FY 07. On July 6, 2006, DeCA responded that they would not have their contracts in place for Southwestern United States and Hawaii by the end of FY 06 and would thereby need our continued support for approximately 60 days into FY 07. In addition, DeCA requested

our support in the Pacific and Europe into FY 07 for an indeterminate period of time. Based on this information, we proceeded with RIF notices for those offices and personnel whereby DeCA contracts would be in place by the end of FY 06. We did not extend RIF notices to those offices and personnel that would need to remain for some portion of FY 07 to provide support to DeCA.

8. On September 6, 2006, DeCA called us to notify us that they experienced a protest on the zone encompassing Northeastern United States and asked if we had the capability to continue our support to them as they dealt with the protest. We advised that we were unable to provide them support for this area into FY 07 for the following reasons:

1. Having serviced DeCA for so long, we are aware of their high expectations for their Produce support, and knowing that we have been losing personnel already, we felt that with a reduced staff (staff at 76, down from 96), and performing functions that they would not typically perform, we could not provide the level of support that DeCA expects, and did not want to damage our reputation as a world class provider by trying to do something without being appropriately resourced.

2. Our personnel have been advised of the loss of DeCA business since the early stages of FY 06, and they have stayed on to help support the mission. RIF notices were provided to the affected personnel upon the receipt of DeCA's correspondence that indicated they would not need our support in FY 07 for this area. Our personnel, if they did not take the early retirement or separation pay incentive, registered for the Priority Placement Program (PPP), and have begun to receive job offers. Given the turmoil that our personnel have already endured, and out of respect to them, we do not want to give them any false hopes by keeping them on for a relatively short period of time.

3. At the same time, we did not want our vendors investing funds for a highly perishable commodity, for a brief period of time, and assume the risk of losing money to the loss of product or unfulfilled commitments.

9. I have read the Declaration of Dana Waters. Mr. Waters worked for me as a first line supervisor responsible for field offices from 1997-2001. He remained in a similar capacity and actually took over my position after my departure from the Produce Division. He retired in August 2006.

10. Mr. Waters' statements are inaccurate. In paragraph 2, Mr. Waters claims he was the Chief, Operations Branch, Produce Unit for ten (10) years, when he was Chief, Produce Division since 2003 or three (3) years. Before that, he held several other positions to include the position he claimed he held for ten (10) years, from 2002-2003. Prior to that, he was the Western Area Operations Chief, Produce Business Unit.

11. Additionally, in paragraph 6, he states that we would support DeCA until DeCA's new contracts were in place, and that is not true. Our agreement with DeCA was to support them throughout FY 06 or September 30, 2006. In our June 19, 2006, letter, we first approached the subject of DeCA needing support in FY 07. And, if they needed support in FY 07, we would seek approval. DeCA's response indicated FY 07 support

needs for other than the area being protested. We, in fact, have accommodated DeCA's request for FY 07 support in the Southwestern U.S., Hawaii, Pacific, and Europe, as indicated above, in that our drawdown plans for field office manning have been delayed in those specific regions in support of commissary business until DeCA established adequate support in those areas. However, personnel reductions in all other regions have continued in accordance with DSCP's new acquisition strategy and new field personnel manning goals.

12. Mr. Waters' paragraph 12 states that DSCP offices are fully operational when, in fact, we have lost personnel in those supporting offices (staff at 76, down from 96), which prevents DSCP from providing requisite Produce support to DeCA in the manner to which they are accustomed, in regions other than those listed above. Paragraph 14 states that DSCP could continue the service provided to DeCA, but as I have stated above, DSCP is no longer capable of providing the appropriate level and number of resources to properly accommodate the DeCA mission. The DSCP position of non-support for other than Southwestern U.S., Hawaii, Pacific, and Europe regions was communicated to DeCA on September 7, 2006. Ironically, in an e-mail dated June 13, 2006, to his subordinate staff, Mr. Waters relinquished responsibility by stating "...can take over all of the personnel re-alignments and coordinate RIFs, etc...", so one wonders how his disassociation could allow him to provide an opinion on what can be accomplished with current resources.

Under penalty of perjury, I declare that the above facts are true and complete to the best of my knowledge and understanding,

9/28/06

RICHARD FASO
Director, Customer Operations

DEFENSE COMMISSARY AGENCY
DeCA EAST
1300 E AVENUE
FORT LEE, VIRGINIA 23801-1800

REPLY TO
ATTENTION OF

DeCA/EA-RDO

MAY 15 2006

MEMORANDUM FOR DIRECTOR, SUBSISTENCE CUSTOMER FACING DIRECTORATE
DEFENSE LOGISTICS AGENCY, DEFENSE SUPPLY CENTER PHILADELPHIA

SUBJECT: Transition Plan for CONUS/OCONUS Produce Support

In response to your correspondence of April 26, 2006, same subject as above, the Defense Commissary Agency (DeCA) offers the following information regarding our on-going initiative to transition from Defense Supply Center Philadelphia (DSC-P) support to DeCA-contracted support for our Agency fresh fruit and vegetable (FFV) requirements.

We appreciate the efforts of DSC-P to continue to support our FF&V requirements during this transition period, but we also recognize the need for DSC-P to progress towards the establishment of its own long-term business model for FY 2007 and beyond. As your staff has previously been made aware, our schedule for transitioning support has focused on a dual-phased process, with support to our CONUS locations being the highest priority under Phase I. As of the date of this correspondence, we fully expect to complete the award of all of the necessary contracts to assume total responsibility for our store locations in the CONUS, to include our locations in Alaska, Hawaii and Puerto Rico. All awards are expected to be completed between now and the September 30, 2006, target date. Some areas of the country will be able to transition in advance of that date. After each contract award in the coming months, we will coordinate the exact transition date for the affected stores with your staff so as to allow your organization to reduce coverage at your field buying activities. We will provide as much advance notice to your staff as possible for each affected area.

Phase II of our plan is to transition the Pacific area store locations, followed by the Europe-based requirements. Unlike the CONUS locations, we cannot provide an expected date for transitioning these locations to 100 percent DeCA support at this time. Our research has confirmed that the loss of the DeCA requirements in both the Pacific and Europe will have a significant impact on your continuing acquisition mission in both areas. We have been coordinating our plans with the key acquisition personnel in both DSC-PP & DSC-PE to transition to DeCA-support in a timely and logical manner. However, unlike the Phase I process, an added objective in Phase II is to mitigate any adverse impact on both the DeCA customers and the DSC-P customers as we complete this process. As such, we will continue to coordinate our actions with both DSC-PP and DSC-PE as we progress.

In the event that anything should change in this proposed schedule, we will notify your staff accordingly. Please do not hesitate to let me know if you have any other questions or concerns on this program. I may be contacted at DSN 687-8505, (804) 734-8505, or thomas.milks@deca.mil.

Thomas E. Milks

Thomas E. Milks
Deputy Director

**Faso, Richard (DSCP)**

**From:** Waters, Dana (DSCP)
**Sent:** Tuesday, June 13, 2006 7:53 AM
**To:** Seislove, Susan (DSCP)
**Cc:** Simotas, Ruthann (DSCP)
**Subject:** FW: Revised closing dates

Sue - thanks for not including me on your msg to field. Why should I know what is going on.

You should have clarified that closing dates remain unchanged.

Effective immediately, you and Ruthann can take over all of the personnel re-alignments and coordinate RIFs etc with Columbus, John Bray, etc.

Mr. Dana C. Waters
Chief, Operations Branch
Produce Unit
215-737-8547
dana.waters@dla.mil

-----Original Message-----
From: Bellis, Brad CAPT (DSCP)
To: DSO Personnel
CC: Daley, Thomas (DSCP); Waters, Dana (DSCP); Faso, Richard (DSCP); Miller, Ray (DSCP); Seislove, Susan (DSCP); Simotas, Ruthann (DSCP); Scarangelli, Helen (DSCP); Holder, Frank (DSCP); Bray, John (DHRC-C)
Sent: Fri Jun 09 16:04:10 2006
Subject: RE: Revised closing dates

To all DSO personnel,

In concert with what Susan Seislove states below, and upon further review of what was previously disseminated on 1 June 06, we have concluded that the numbers listed in the 1 June 06 correspondence are invalid. We will be contacting each of the DSOs over the next week to work through the necessary revisions.

Again, we sincerely apologize for the miscommunication and delay in this process. My staff will continue to provide updates to you as status changes. As always, if you have any questions or comments, pls do not hesitate to work them through your chain of command here in Philadelphia.

Regards,
CAPT Brad Bellis

Captain Brad Bellis, SC, USN
Director, Subsistence Supplier Operations (DSCP-FT)
Defense Supply Center, Philadelphia
700 Robbins Ave.
Philadelphia, PA 19111
wk (215) 737-2900
DSN 444-2900
cell (267) 236-5119
email: brad.bellis@dla.mil

---

From: Seislove, Susan (DSCP)
Sent: Friday, June 09, 2006 3:16 PM
To: DSO Personnel
Cc: Daley, Thomas (DSCP); Bellis, Brad CAPT (DSCP)
Subject: FW: Revised closing dates
Importance: High

TO ALL PERSONNEL:

Please disregard the e-mail below. As you are well aware, we are in a transition stage and the environment is constantly changing. We need to gather additional information before making further determinations. We apologize for any inconvenience this has caused. We are expediting the process and hope to have this resolved within a reasonable timeframe. Thank you for your patience.

The Produce Business Unit

---

From: Waters, Dana (DSCP)
Sent: Thursday, June 01, 2006 10:36 AM
To: DSO Personnel
Cc: Scott, Patricia (DSCP); Faso, Richard (DSCP); Daley, Thomas (DSCP); Labrosciano, Gail (DSCP); McGarvey, Amelia (DSCP); Baldino, Leah L (DSCP); Bonese, Joanne (DSCP); Boyle, Jane (DSCP); Bundy, Renee (DSCP); Fletcher, Scott (DSCP); Grady, Peggy (DSCP); Harkins, Janice (DSCP); Holder, Frank (DSCP); Leason, Dawn (DSCP); McCoy, Kathleen (DSCP); Merch, Steven (DSCP); Perrello, Donna (DSCP); Pizzo, Steven (DSCP); Pooler, Sally (DSCP); Scarangelli, Helen (DSCP); Seislove, Susan (DSCP); Sharpe, Mary Ann (DSCP); Simotas, Ruthann (DSCP)
Subject: Revised closing dates
Importance: High

All personnel: attached are new schedules, etc that are presently in coordination with legal and policy - i.e. have not been officially approved. However, highly doubtful that there would be any major changes - if there are, I will notify you as soon as possible.

I will also forward an updated visitation schedule for Personnel Columbus to be visiting your offices.

Please read carefully and if you have questions, please consolidate with your Chief to forward in to your supervisor.

Yes - there may be some changes on closing dates, but I personally feel that these would be extensions on dates indicated.

<< File: Field Strength 5-22-06 ver2.0.doc >> << File: closing extension 5-22-06ver2.0.doc >> << File: Contract Impl 5-23 -06 ver2.0.doc >>

Mr. Dana C. Waters
Chief, Operations Branch
Produce Unit
215-737-8547
dana.waters@dla.mil

DEFENSE COMMISSARY AGENCY
HEADQUARTERS
1300 E AVENUE
FORT LEE, VIRGINIA 23801-1800

REPLY TO
ATTENTION OF

PS

July 6, 2006

MEMORANDUM FOR DEFENSE LOGISTICS AGENCY, DEFENSE SUPPLY CENTER PHILADELPHIA
(ATTN: DIRECTOR, SUBSISTENCE CUSTOMER OPERATIONS)

SUBJECT: Transition Plan for CONUS/OCONUS Produce Support

In response to your correspondence of June 19, 2006, same subject as above, the Defense Commissary Agency (DeCA) offers the following information regarding our on-going initiative to transition from DSC-P support to DeCA-contracted support for our Agency fresh fruit and vegetable (FF&V) requirements. As stated in our earlier correspondence of May 15, 2006, we appreciate the efforts of DSC-P to continue to support our FF&V requirements during this transition period. Your latest correspondence asked for specific information relative to the on-going acquisitions by DeCA, so as to allow DSC-P to properly plan for any necessary continued FF&V support to DeCA beyond the FY 2006 target date. The following schedule is provided:

| DeCA Area | # of Stores | Location | Projected Performance Start |
|---|---|---|---|
| 2 | 36 | Midwest U.S. | Aug 1, 2006 |
| 3 | 41 | Northeastern U.S. | Sep 1, 2006 |
| 4 | 14 | Northwestern U.S. & Alaska | Oct 1, 2006 |
| 5 | 36 | Southeastern U.S. & Puerto Rico | Sep 1, 2006 |
| 6 | 35 | Southwestern U.S. & Hawaii | TBD |

As shown above, DeCA anticipates the award of formal contracts, and to assume full performance coverage under those contracts for Areas 2 through 5. As such, barring any protest of the awards that may delay the projected timeline, DeCA believes that continued FF&V support from DSC-P will not be required for these specific locations beyond FY 2006.

For Area 6, DeCA expects to award its formal contract(s) for this area prior to the end of FY 2006, but does not expect the awardee(s) to assume full delivery requirements to all locations prior to the start of FY 2007. As such, continued support for these locations is requested from DSC-P until such time as the DeCA contractors can assume full operational control for these locations. This will include DeCA locations in Arizona, California, Hawaii, and Nevada. At this time, we project that need for a period of 60 calendar days beyond the beginning of FY 2007.

For the Pacific (Guam, Japan, Okinawa, and South Korea) and Europe, DeCA expects to have a continued need for DSC-P FF&V support for these locations. As stated in our earlier correspondence, we cannot provide an expected date for transitioning these locations to 100 percent DeCA support at this time. Our research has confirmed that the loss of the DeCA requirements in both the Pacific and Europe will have a significant impact on your continuing

acquisition mission in both areas. We have been coordinating our plans with the key acquisition personnel in both DSC-PP and DSC-PE to transition to DeCA-support in a timely and logical manner. However, unlike the CONUS transition, an added objective in the OCONUS transition is to mitigate any adverse impact on both the DeCA customers and the DSC-P customers as we complete this process. As such, we will continue to coordinate our actions with both DSC-PP and DSC-PE as we progress.

In the event that anything should change in this proposed schedule, we will notify your staff accordingly.

Thomas E Milks

Thomas E. Milks
Director of Sales